Good morning, Your Honors. My name is Michael Donahoe. I work for the Montana Federal Defender's Office, and I'm here on behalf of Mr. Defrance. You know, we all prepare for these arguments to the best of our ability, and I've had good days and bad days here. But I'm going to take a risk and make a prefatory statement and ask Your Honors to maybe think about how to think about this case and the record in it. This would be a little unorthodox for me, but it seems like something I should do. The record here is extensive. The issues, I think in one of the briefs the government characterized them as shotgun. That's sort of a pejorative term. It's just like you're trying to get through the paper, and there's no meaning. You're just sort of protecting yourself. I'm not here to protect myself today. This was a very difficult case. It was hard to think out. It was hard to craft the record, to guide the record, to help the district court to make good decisions. And it occurred over the spectrum of the entire procedural wicket, if you will, from pretrial motions, limiting papers, reconsideration papers, trial arguments, sentencing arguments, et cetera. So I could cherry pick some of these issues out of here and talk about them in isolation, but what I'm asking is that at the end of the day here for this particular argument, this particular case today, that the issues be looked at sort of together in a more holistic way. And I think that's warranted here, especially since jurisdiction is on the table, because there was never a contemporaneous finding that Mr. DeFrance was in a similarly situated spousal-type relationship until Judge Christensen made that finding. So there's distance in time and in quality between the PFMA from Montana and Judge Christensen's finding. And that's a problem because we have a lot of notice issues in play here, fair warning issues, vagueness issues. All of those issues are on the table. So I'd like to walk through the record kind of quickly and start with Deputy Largent, who was the officer on the scene at the PFMA. He visits with the dispatcher, Mr. Brown. I'll call him Dispatcher Brown. They have a little powwow on the phone or on the radio. I don't know which. Both of these individuals testified at the trial. There's conversation, I think, coming from Deputy Largent, and he says to Mr. Brown, what's the relationship? It was at the top of his mind, Deputy Largent. He wanted to know. And when we got to the trial, I'll go right there, Deputy Largent was on the witness stand, and I asked him, I said, you had that exchange with Dispatcher Brown. Why was that? And he says, because it's a different investigative set for a domestic as opposed to just a generic assault. And then we talked about that, and I don't really need to go there. But it was on the table, the relationship, and it followed through. I can complete that. Deputy Largent interviewed the victim. She claimed a dating relationship with Mr. DeFrance that had been in existence for some nine months. She had recently returned to Montana in June of 2012. This event happened in April of 2013. And that gets written up that way report-wise, et cetera. Then if you just go to the guilty plea hearing, what we know about that from Judge Strine, Judge Strine at the end of the day says, you know, I just relied on the probable cause of Deputy Largent. So it fits snugly within the discussion here that we're talking about a dating relationship, and that's meaningful. Now, I could stop here, and probably I think I should, and talk about Hayes. One of the big objections coming from the district court is, you know, Hayes doesn't allow this. As long as the element, the relationship element, is part of the federal offense, we're good to go, regardless of whether or not the state statute has a relationship in it. And I'm just sorry, I beg to differ. That's too broad a reading of Hayes. There's two things from Hayes. Sort of right at the beginning, Justice Ginsburg says, the whole thing is that the domestic relationship need not be a defining element of the predicate offense. Need not be. And then later in the opinion, given the paucity of state and federal statutes targeting domestic violence, we find it highly improbable that Congress meant to extend 922G9, firearm possession, ban only to the relatively few domestic abusers prosecuted under laws, rendering a domestic relationship an element of the offense. That, to me, at a minimum, is ambiguous, and I actually think it's a fairly straightforward reading. The country is broken down into jurisdictions that have domestic relations-type statutes or not. At that particular point in time, I think it's improved statistically. There are now currently more, maybe over half, in the United States. And there's no reason, and I can go right to the categorical approach, why, in this particular instance, you couldn't conduct a categorical analysis between the relationship element set forth in the Montana statute and the relationship element set forth in... Is your argument that Hayes was of its time, and now because there are more, essentially, partner domestic violence statutes, that now the relationship should be treated as an element that has to be matched? No, Your Honor. No? Okay. That's not it. Okay. That was an observation that there's more. Okay. I'm content that the... I'll even use the word few. There were a few jurisdictions stateside that had the relationship element in it. I'm just saying that Hayes does not outlaw application of the categorical approach in this context. There should be some pretrial modality, procedural modality, to get into the case and say, is this a case where the federal law applies? But isn't that all dependent upon whether it's an element? The specific type of relationship, is that an element as opposed to needing to show, beyond a reasonable doubt, a relationship, a qualifying relationship? Well... As opposed to the specific type being a means? I don't actually understand the question. They're both elements. When you said there needs to be a modality to get in and do a categorical analysis, I understood you to be asking that question. It seems to me that there is a modality, and the question is that really requires us to decide whether or not that type of relationship is an element that had to be... An element in the stateside statute or the federal statute? The state statute. Yeah, I... I think several of your arguments really turn on that, your contention that it's an element. That's why you think the indictment was infirm? Well, I think it is an element. There has to be some way to isolate that.  That's my question. Why do you think it's an element? I think it's an element because it works for the categorical approach. That's why I think it's an element. There should be some way to decipher that in a pretrial context. And if that doesn't work, then go to the collateral estoppel component of the Double Jeopardy Clause, which allows a deeper dive. You can go in and look at other things. Why do you think the government's estopped? Why do I think the government's estopped? Yes. That's a different part of the argument, but I think... I thought you were just going there. Forgive me. I didn't mean to interrupt you. I thought you were going there. All right. Estoppel in what sense? Under the Double Jeopardy Clause? Sure. Yeah. So... They're estopped because the record reflects, at the plea hearing on the PFMA, that Mr. DeFrance was in a dating context. Well, I think what your argument is... I understood your argument, your assertion in your brief, is that there was a finding to that effect. And I can't find the finding. And I don't... And I'm not sure that I agree with you that there would have had to be one. Oh. But is there a place in the record where you think a finding was made to that effect? A finding of dating? Yeah. That they were in a dating relationship. By implication, I think it overrides the finding that the district court made about being similarly situated. Ipso facto rejects the understanding that there was a dating relationship. That's if you think they're mutually exclusive, I suppose. All right. Well, that's a different... And I guess I can think about that, but that's not where we are right now. If that's where we want to go, I don't see them as a continuum. I don't know how we get around the bipartisan Community Safety Act. If Congress has to come in and say, dating now today, as of June 25, 2022, is an element of the federal statute, I don't see that there's any continuum in there. It's a is or is not kind of context. If you show that there's some kind of dating relationship, and that's clearly what was going on here, there's no way to proceed factually or legally on a 922 G9 offense. You could do that today, but you couldn't do that then. Why do you think that Judge Christensen didn't have the record he needed to make the finding that he made regarding the similarly situated finding? Why do I think he didn't have the evidence? Yes. Okay. Because there's not anything, and this goes to my prefatory remark, there's not any decision in this country that explicates that. There's nothing that defines the components that go into it. The district court struggled, I think, on the issue of whether or not cohabitation would be a feature of this relationship, and just decided to reject it. But if you go in and look at the papers, there were six, seven cases that were cited. Many of them were nonpublished decisions. Several of them had cohabitation as was in the mix. Defining those sorts of relationships. So what's one to do in terms of notice? How do you know if you're in it or not? How do you know, especially in this particular record, if you're before the PFMA court, knowing that you're in a dating relationship? If that's the case, the state of mind is that statute, 922 G9, doesn't apply to me. Citizens shouldn't have to be rooting around in decisions like Judge Christensen relied on to understand the law. That should be a straightforward application. I should be able to open the book and know where I am. There was nothing here in this record that told Mr. DeFrance that he was similarly situated as a spouse at 19 years of age with his 17-year-old girlfriend. Does that answer the question? I think you've answered it. Okay, thank you. Do you want to talk about your categorical analysis about the predicate offense and why it may or may not qualify? Well, it doesn't qualify because if it's a dating relationship, it's not a match. I'm talking about the element of the use of force. I'm just looking at the clock and wondering if you want to get to whether or not. That the state counterpart has as an element the use of physical force. I think that's uncontested. So can you give me your best argument why you think Montana doesn't match?  So Castro, of course, is not binding. And it expressly says in footnote 4 it's not reaching the question. But I think we all know that. So could you just flesh out your reliance on Castro, please? All right, so bodily injury is a unitary term. It includes mental illness. It's overbroad. Castleman certainly applied the categorical approach to that. Which is another interesting feature in thinking about Hayes. Clearly, in some circumstances, the categorical approach applies. It depends on what element. Can we focus on this point first before we lose it? Because I want to make sure that I understand your argument. Okay. I think you're relying heavily on Castro and opposing counsel is going to rely heavily on Castleman. That's how the briefing looks to me. I think that's the landscape. So Castro, of course, was answering a different question. But you're still relying on it because it makes this comment in footnote where it compares the Montana statute to the Tennessee statute. True. Right? True. I think that's what you're relying upon. So I'm just trying to probe that because it seems to me what's happening, what the district court did, I think, from the record is he looked purely at the elements, purely at the elements and looked to see if on the text of the elements without looking to case law, whether there was a match because our case law suggests that if the statute is explicitly overbroad, you're done. Castro, of course, looked to see what Montana criminalizes and it cast the net a little more broadly because it included defining those terms by looking at case law. And I'm trying to figure out whether you think that's the or why you think that's the correct approach for us to take here. I think the correct approach to take here is the simple one. And that is that bodily injury has its own definition in Montana. It's a unitary term and it's overbroad because it includes... Maybe I could do it this way. Montana has the verb, the actus reus is as broad as it can get and it's identical to Tennessee, right? A defendant who causes bodily injury to a specific class of people. Those are the folks we're talking about. And then the question is, what's bodily injury mean, right? So I don't see any distinction at all between the Montana statute and the Tennessee statute on the actus reus. It really gets down to the text of the statute in terms of the resulting bodily injury. Can you explain to me why you think they differ? I think the district court thought they didn't differ. Montana's bodily injury definition, he didn't see any daylight and I think he's incorrect. Can you tell us why you think he's incorrect? Okay, the only reason I could tell you why is because I've watched more than once the Castro argument and there were questions from the panel that were, I think, directed to the government that indicated that you could accomplish the mental harm that's part of the unitary term without any type of force. And I think that's a fair rating of Castro. So you're going right to the point that I want to try to explore. Do you think that that requires looking to case law in Montana as opposed to just looking at the textual elements? No, just to the element itself, yes. To the text, okay. I mean, there's case law discussed in Castro. Exactly. Yeah, there's a fairly lengthy analysis. We have some other case law that indicates we ought not do that at step one of the categorical analysis and that that really comes in step two if a defendant is trying to show that Montana does or has or has not ever actually applied a statute in that way. So I'm trying to figure out if your position is that at step one we ought to be looking at more than the text and should be looking at Montana case law. I think that we should, we can complete that analysis by looking at the statute. Okay, that's a direct answer to my question. Judge Raycott, do you have additional questions to add some? I'm going to take the last couple minutes of your time.  You bet. We'll hear from the government. Thank you, Your Honor. Tim Tatark of the District of Montana on behalf of the United States. I'll start with the categorical approach issue. Unless the court would like to go somewhere else. As Castleman says, to meet the lower standard for use of force for a misdemeanor crime of domestic violence as opposed to the violent force necessary for a felony crime of violence under the Johnson analysis, all that is required is that the statute cover common law battery. When Montana codified its assault statutes in response to the model penal code in 1973, the Montana Code Commission, the drafters of that statute, made clear that battery is an essential element of an assault for the provision of assault for the purposely or knowingly causing bodily injury under that subsection.  are you talking about or are you talking about for the resulting bodily injury? The actus reus. The actus reus for the Montana statute is identical to Tennessee. I'm trying to tease out the difference between, if there is one, between the resulting bodily injury. Maybe that's not what you're speaking to. I'll get back to the... Yes, Your Honor. With respect to the... So, the actus reus is the same between the Tennessee statute and the Montana statutes. The definition of bodily injury is, as Judge Waters said in the... No. One of the other cases that are cited here. It's a distinction without a difference. The Tennessee statute covers... I mean, the Castleman didn't involve any sort of real engagement with the text of the Tennessee statute that we're dealing with here. And there is some textual difference. Mental, I think, impairment of a mental function versus, I think, mental injury or psychological injury. I think there is arguably a textual difference. And I don't have any sort of discussion in Castleman about that element. So, it's hard to read Castleman as completely settling the issue here. And what I do read Castleman as settling is that there has to be some physical force, but it can be the least of the physical force possible. It could be the least offensive touching. It can be indirect physical force. But the force still has to be physical in some way. That's my understanding of Castleman. And my understanding of Castro is that we interpreted the PFMA as being something that can be violated through the use of non-physical force, emotional or intellectual force. If that's true, how do we have a categorical match here? So, I agree with your assessment of Castleman. I disagree with your assessment of Castro because Castro expressly, as Judge Christin noted in footnote 4, said, we are not answering the question about whether or not Montana addresses common law force. We're only addressing the standard... I know they didn't answer the question, but they did interpret the PFMA. Correct? I mean, they did say somewhere that it is a statute that could be violated through the use of emotional or intellectual force or came pretty close to that. They came pretty close to doing that. I agree with that, Your Honor, but they did not do that. And there's a good reason...  I think it's the decision tree as well. I'm really hoping you're going to engage with Judge Sung's point because this is what it's about for me.  We're just looking at the resulting bodily injury and Castro does talk about whether or not Montana required as analysis, the analysis of the case law leads to a different result here than it does in Castro. Take one of the cases that Castro relies primarily on is the Shen case. It's a district court case, but Castro relies on it. And that is a case involving sexual assault. And the sexual assault statute requires sexual... It's a misdemeanor if there's sexual contact. But that can be aggravated to... to felony if there is bodily injury during... in the course of that assault. The district court there said that bodily injury, it doesn't require... We know that it doesn't require violent force. There's an actual case that doesn't involve physical force, violent force under Johnson because it can just... The injury can just be mental, but there had to be physical contact. And so that's... Right, but then you also have the Stocking case where there's no evidence of any physical contact. The Stocking case there... So if I can just finish the point on Shen, because as I mentioned earlier, I think if you're going to look at what Montana... The way Montana would decide this, you have to look at the Code Commission comments because Montana looks at the commentary. I think that's true of... Wait a minute. Do you want us to look at the case law and the commentary at step one of categorical analysis as opposed to just looking at the elements? I really don't know that you've answered that question. So I'm just talking about the order of operation which is at the very end of the decision tree, right? At the very end, we do this cross-check and say reality check. Has Montana ever really prosecuted this? And in this case, the answer is no. Absolutely. That is absolutely the case, Your Honor. So if you can go back up and tell me, because now you're confusing me by looking to commentary as well as case law. So my question is, when we look at step one, when we do a categorical analysis, are we limited to looking to the elements which seems to be suggested in some of our case law? Yes. I believe the answer is... So as I understand it, so as I understand it, you look at the elements and you have to look at whether or not the elements... If the elements clearly go beyond, it is not a matter of interpretation. Take, for example, the case of an or... That's Judge Sung's question. If we're doing that analysis, we have case law that says if the text of the statute explicitly goes beyond the federal counterpart, then the analysis is over, it's overbroad. That's what she's looking at. So from the text alone, you've now taken the position that we should just be looking at the text. Can you explain this? I asked opposing counsel the same thing. He said yes. Without looking at case law, from the text alone, it's overbroad. I'd really appreciate hearing the government's response to that. Why is Montana broader than... Why is Montana's definition of bodily injury broader or not broader than Tennessee? How does that compare, those two? It is not broader. Well, Montana includes mental illness or impairment. Tennessee includes temporary illness or impairment of a function of a mental faculty. And to Judge Sung's point, the Castro opinion talks about this and sees some delay between these two. Why do you think that's incorrect? So, but in order for Castro to get there, Castro has to turn to look at the... Castro then looks at the case law. Right? That's how... The way that Castro decides... And again, Castro didn't answer this question, but Castro says, we might be able to come to a conclusion that Tennessee is narrower if we turn to look at the case law. And what I am saying is if we look at... If we are turning to look to the elements, to look beyond the elements to the interpretive tools, we have to look at both the fact that Montana has never applied this statute more broadly and if you look at the legislative intent, the legislature made clear when they adopted it that it doesn't include... Doesn't go more broadly than... That battery is an essential element. That's... We quote that language from the Code Commission at page 34 of our brief. And so, in 50 years, when Montana adopted the statute, they said, this doesn't... Battery is an essential element and in 50 years of applying that case law since then, there has never been an assault under any of Montana's statutes that involves assault purposely or knowingly causing bodily injury that did not include common law battery. So that latter point is uncontested. It's never been prosecuted that way. I fully appreciate that. But I'm really trying to figure out this order of operations question. And so, you've now said you think that we're looking at the text alone Yes? So... To decide whether or not it's over broad. Is that right? Now, I thought you were saying that the text has to be viewed even before we get to the practice thereafter in light of what the legislature indicated in the legislative history was the meaning of the text. And that was that there had to be battery. And that this was then reinforced by what happened subsequently which was no case that did not involve battery. That is correct, Your Honor. And if I can try to address Judge Christian's question. The analysis comparing the two the language textually the question can't be does the statute admit of a possible interpretation that is broader because because then that would be just purely an act of legal imagination. Well, that's not what Castro did. Castro wasn't relying on pure imagination. Right? It was relying on the textual broadening of the definition of bodily injury to include mental injury. Correct. And saying that there's no reason nothing in the statute that cabins because that mental injury can be caused by non-physical force. It doesn't take a leap of faith to think of a factual scenario in which mental injury can be caused by non-physical force. And then I try to understand your contention I think based on the commission comments that they're saying battery what they actually say is actual what you say is   element. But then they have broadened the definition of bodily injury. So I don't see anything that says physical force is an element of the crime of PFMA. But your your honor so if if you're just going to you're going to say it doesn't take an act of of legal imagination to say causing mental illness or impairment without mental injury the same thing has to be true of  If you're looking entirely in the abstract the Tennessee statute saying causing temporary illness or  of a  faculty at least in the midst of the possibility. That's exactly what the district court decided. He couldn't see any daylight between the definition of bodily injury and the Tennessee statute. Castro thought there was a difference. Why was Castro wrong about that? Because in order to find a  difference Castro had to turn to the Tennessee case law. If you're going to turn to the Tennessee case law then you have to also look at the  case law. The  from the code commission says it requires battery. That is bodily injury or offensive contact. And then explains that even the provision that doesn't require the provision about apprehension requires apprehension of bodily injury not mere physical contact or mere offensive touching. That language would be very strange and to use the term battery entirely disassociated with its common law history as touching. And Montana didn't do that. I noted in the  statute when they were diverging from common law for a term like  they did not expressly say.  diverging from the common law here and explain why. Can we talk about Castleman for a  It seems to me that Castleman doesn't include the granular analysis that we would expect to see in some categorical analysis. It leaves some question unanswered about how they got to where they got. The district court thought the statutes were comparable to Tennessee and the Supreme Court said Tennessee qualifies. Do you think I have that wrong? No. I think there's no question. What do we do about the fact that we have questions left about how the Supreme Court got there? I think that's how it's supposed to   question isn't can I read this statute in a way that it might be broader than physical force. If I have a question after looking at the text, which I think you have to have here, if I have a  after the text, then it has to apply and you have to find an actual case where the state applies the statute overbroad.  Montana said that it intends to require batteries and in 50 years since that it has never done an assault statute that doesn't require that. Is there case law from other circuits that have engaged in this kind of analysis post-castleman about other states' domestic violence laws that we should be looking to or be concerned about splitting with? There are very few cases that have conducted this. There are many cases that draw the distinction between the force necessary for violent force and statutes saying statutes don't meet that standard but doing the analysis we find that battery is sufficient. But there are very few cases that put assault statutes entirely outside of Castleman and I think that goes to that purpose in interpreting that way would turn 922G9 into a dead letter in Montana. Are there cases, circuit cases out there that have done this kind of analysis and looked at other states' definition of bodily injury to try to find out whether or not they satisfy the physical force requirement for 922G9? I do not know of any other statutes interpreting bodily injury this type of definition of bodily injury. You said statutes, do you mean no other cases? No other cases interpreting this kind of language of bodily injury. Again, I think the analysis really is straightforward. If you look at the, I mean, there's a reason why cases don't decide more than they would in Castro. I think the stocking cases do too,  while it's one thing to say those cases involve substantial risk of bodily injury, and it's one thing to say the court didn't do any, the court found serious bodily injury without doing any assessment of the risk of violent physical force. But underlying those cases, it is undisputed that those cases concluded that the fear that the victim had was a fear based on physical safety. The court did not say there's no risk of physical contact, but we're finding violent force anyway. So, the Duane Alvarez analysis has to be done from scratch here in Montana. From the time that the statute was put in place, says the battery is required, it has never applied the case, the statute to a case where physical force was not involved. In the sexual contact context, which I think is really valuable for this court to look at, the code commission expressly looked at it and said, we know that the risk with what they call indecent assault, the harm there is going to be more mental than physical. It has to do with shame and things like that. But in the assault statute, we're requiring contact and we're going to put away things like indecent exposure for other statutes. It would make absolutely no sense for Montana in the context where it was actually considering mental harm,  the impact of shame and things like that, to say,  but in sexual contact, there has to be contact, but without any commentary saying, but we can say purposely or knowingly causing bodily injury can be     statute explicitly defines an offense more broadly. My question is whether you are familiar with our case called United States versus Little Rico. It's a short opinion that goes to this point. At the categorical, what I'm calling step one, are we just comparing the elements or are we allowed to look at case law? Forgive me. Is that the one where you and Judge Sung were on that panel? We were not on that one. I thought you two were on that one. I think there is a big difference between saying burglary includes automobiles as in  and saying this language admits of an interpretation         that might be over broad. There we do need to look at the case law. I hope I answered your question. I do have a question. They cited a case where they expressly consider a situation in which mental injury is caused through emotional abuse. No physical contact, no physical threat. I'm trying to  why that interpretation of the PFMA being something that can be where that type of mental injury can be caused without the use of physical force is not controlling here. We have three judges on the ninth circuit saying this statute can be violated. Thank you for asking that question. The Ross case, I recommend the court's attention to page four of the Ross case. Immediately after that sentence, this could be done using a tirade of insults. In that same paragraph, the court backs away from that. The court says this can be done with a tirade of insults. It then says a case with less than Johnson level force would likely be sustained by the  Supreme Court. In the first sentence of the next paragraph it says this    can be                                                        It
judges: CHRISTEN, SUNG, Rakoff